**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

MARTINSON INDUSTRIES, LLC,
a Delaware limited liability company,

Plaintiff,

vs.

PHALANX DEFENSE SYSTEMS, LLC,
a Florida limited liability company

Defendant.

**Case No.:**

INJUNCTIVE RELIEF REQUESTED

JURY TRIAL REQUESTED

## COMPLAINT

Plaintiff Martinson Industries, LLC, hereby files its Complaint against Defendant

Phalanx Defense Systems, LLC, and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement and false marking, arising under the

patent laws of the United States, Title 35 of the United States Code, which results from

Phalanx's infringement of Martinson's patented innovations related to tactical equipment, for

unfair competition arising under the Lanham Act, Title 15 of the United States Code, and

corresponding state law, for breach of contract resulting from Phalanx's failure to pay royalties

pursuant to a license agreement, and for declaratory judgment that Martinson has not tortuously

interfered with Phalanx.

## PARTIES

2.      Plaintiff Martinson Industries, LLC ("Martinson") is a limited liability company formed under the laws of Delaware. Martinson is the assignee of U.S. Patent No. 9,737,100 ("the '100 patent") and U.S. Patent No. 9,861,145 ("the '145 patent"), each entitled "Concealable Body Armor and Combination Bag/Vest." A copy of the '100 patent is attached hereto as Exhibit A. A copy of the '145 patent is attached hereto as Exhibit B.

3.      Upon information and belief, Phalanx Defense Systems, LLC ("Phalanx") is a limited liability company formed under the laws of Florida, with a principal place of business at 1125 NE 8th Avenue, Gainesville, Florida 32601.

## JURISDICTION AND VENUE

4.      Martinson incorporates by reference and re-alleges the allegations of paragraphs 1 through 3.

5.      This is an action for patent infringement and false marking arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

6.      This is an action for unfair competition arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*, and unfair competition and deceptive trade practices under Florida law.

7.      This is an action for breach of contract under Florida law.

8.      This is an action seeking declaratory judgment of no tortious interference under Florida law.

9.      This Court has exclusive jurisdiction over the subject-matter of this complaint for patent infringement and false marking pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.      This Court has jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

11.     This Court has jurisdiction over Martinson's state law claims pursuant to
28 U.S.C. §§ 1338(b) and 1367(a).

12.     This Court has *in personam* jurisdiction as to Phalanx because, upon information
and belief, Phalanx is subject to both general and specific jurisdiction in this State.  More
particularly, upon information and belief, Phalanx is a limited liability company formed under
the laws of the State of Florida that maintains its principal place of business in this Judicial
District and is, therefore, a resident of Florida. In addition, upon information and belief, Phalanx
regularly conduct business activity in the State of Florida and has made, used, imported, sold,
and/or offered for sale products that infringe one or more claims of the '100 patent and/or the
'145 patent in this Judicial District.

13.     Venue is proper under 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL ALLEGATIONS

14.     After he was honorably discharged from the United States Marines Corps, Allan
Ray McIntire, Jr. (hereinafter "Mac") turned his attention to creating inconspicuous tactical
equipment capable of providing lifesaving protection at a moment's notice.  As a member of
Martinson, Mac refined his invention through multiple prototypes until it was ready for
introduction to the market.  In tribute to Mac's grandmother, Martinson branded its innovative,
combination bag/vest product the ELSA, which Martinson converted to an initialism—ELSA:
Emergency Life Saving Armor.

15.     The ELSA was well-received by the industry.  When displayed at industry trade
shows, such as the industry-leading SHOT Show, the product attracted significant attention and
received high praise for its novel approach to combining discrete, concealed armor protection
with rapid deployment capabilities.  In addition, the ELSA product has been acclaimed by

numerous industry media outlets, including Soldier Systems Daily, Recoil Magazine, On Target Magazine, and numerous YouTube gear reviewers.

16.     As a result of Martinson's efforts to protect its intellectual property in the ELSA product, Martinson is the owner of the '100 patent and the '145 patent.

17.     Because Phalanx has made, used, imported, sold, and/or offered for sale products that infringe one or more claims of the '100 patent and/or the '145 patent, Martinson brings this action for patent infringement to ensure an end to the infringement and to recover damages for the harm caused by Phalanx.

18.     Because Phalanx breached its contractual obligations to Martinson, Martinson brings this action for breach of contract to recover damages adequate to compensate for past-due royalties and interest.

19.     Because Phalanx has falsely indicated that its products are patented for the purpose of deceiving the public, Martinson brings this action for false marking to recover damages adequate to compensate for Martinson's competitive injury.

20.     Because Phalanx has falsely advertised that its products are patented, Martinson brings this action for unfair competition to ensure an end to Phalanx's false advertising practices and to recover damages for the harm caused by Phalanx.

21.     Because Phalanx has been using Martinson's ELSA mark to advertise, market, and sell the infringing products, including intentionally inducing others to use the ELSA trademark, Martinson brings this action for unfair competition to ensure an end to Phalanx's unauthorized use of the ELSA mark and to recover damages for the harm caused by Phalanx.

22.     Martinson also brings this action under Florida common law unfair competition to ensure an end to Phalanx's unfair and deceptive practices.

23.     Because Phalanx has accused Martinson of tortious interference, Martinson brings this action for declaratory judgment, seeking a declaration that Martinson has not tortiously interfered with Phalanx.

## THE '100 PATENT

24.     The U.S. Patent and Trademark Office duly issued the '100 patent, titled "Concealable Body Armor and Combination Bag/Vest," to Martinson on August 22, 2017.

25.     The claims of the '100 patent are valid and enforceable.  All rights in, to, and under the '100 patent have been assigned to Martinson, and Martinson has the exclusive right to enforce the '100 patent.

## THE '145 PATENT

26.     The U.S. Patent and Trademark Office duly issued the '145 patent, titled "Concealable Body Armor and Combination Bag/Vest," to Martinson on January 9, 2018.

27.     The claims of the '145 patent are valid and enforceable.  All rights in, to, and under the '145 patent have been assigned to Martinson, and Martinson has the exclusive right to enforce the '145 patent.

## THE LICENSE AGREEMENT

28.     On May 5, 2014, Martinson and Phalanx entered a license agreement through which Phalanx acquired an exclusive license to manufacture, produce, use, market and sell Martinson's product designs ("License Agreement"). A true and correct copy of the License Agreement is attached hereto as Exhibit C.

29.     Under the License Agreement, Martinson's designs were defined to be:

certain products designed by LICENSOR, as listed below, including all
named and unnamed previous versions, designs, iterations or derivations
thereof, and any and all post-prototype named or unnamed versions,
designs, iterations or derivations thereof (hereinafter collectively the
"PRODUCT(S)" or the "License Design(s)", interchangeably), as set forth
in the "Licensed Design Addendum", attached as exhibit "A" hereto."

30.     Further, Exhibit "A" to the License Agreement provided as follows under the

"Licensed Design Addendum":

1.  "ELSA - Emergency Life Saving Armor"; "Hard Armor in a Bag"
    system, or any other name, description or identifying convention
    related to the product known as "ELSA" as applied to the products
    which occupy the civilian, law enforcement, non-law enforcement first
    responder and military market segments, for body armor products,
    only.

31.     On information and belief, Phalanx began manufacturing and selling one or more

"ELSA" combination bag/vest products under the License Agreement during the third-quarter of

2014.

32.     Upon information and belief, during the term of the License Agreement,

Martinson provided Phalanx with proposed improvements to the designs Martinson had licensed

to Phalanx.

33.     Upon information and belief, after Phalanx introduced the ELSA product to the

market, Martinson became aware that Phalanx had begun manufacturing and selling a

combination bag/vest product identified as the "Escort," which was a combination bag/vest

product that was a highly-similar derivative of the ELSA product.

34.     Upon information and belief, the Escort combination bag/vest product was

understood by retailers to be highly similar to the ELSA product, with one prominent retailer

describing that the "ESCORT Briefcase Plate Carrier takes the innovative features found in the

ELSA carrier and combines them with streamlined manufacturing methods to produce a more affordable and slimline version."

35.    Upon information and belief, Phalanx failed to notify Martinson that it had begun selling the Escort product.

36.    Upon information and belief, when Martinson requested that Phalanx pay Martinson royalties for Phalanx's sales of the Escort product, Phalanx refused.

37.    Upon information and belief, on or about March 19, 2015, following Phalanx's refusal to pay Martinson royalties for Phalanx's sales of the Escort product, Martinson provided Phalanx with the 90-day termination notice required under Section 14 of the License Agreement.

38.    Upon information and belief, on or about April 16, 2015, Martinson sent Phalanx a follow-up letter, advising Phalanx that Phalanx was in breach of the License Agreement due to Phalanx's failure to provide a royalty statement that included all units of all products (including derivations) sold under the License Agreement and pay royalties due as required, and notifying Phalanx that Martinson intended to immediately terminate the License Agreement for cause if the breach remained uncured as of May 20, 2015.

39.    Upon information and belief, when Phalanx failed to cure the breach identified in Martinson's April 16, 2015, letter, Martinson, by letter dated June 2, 2015, terminated the License Agreement effective June 3, 2015.

40.    Upon information and belief, Phalanx has never reported its sales of the Escort product to Martinson and has never paid Martinson the royalties due under the License Agreement for Phalanx's sales of the Escort product.

**PHALANX'S NOTICE OF MARTINSON'S PATENT RIGHTS**

41.     Upon information and belief, on November 19, 2015, Martinson sent letters to Phalanx, and to AR 500 Armor and North American Rescue, two companies that Martinson understood continued to sell the ELSA product despite the June 3, 2015, termination of the License Agreement, advising each party of Martinson's provisional patent rights (collectively, "Notice Letters").

42.     Upon information and belief, Martinson's Notice Letters further advised that Martinson believed that the "ELSA" and "ESCORT" products were subject to Martinson's provisional patent rights. The Notice Letters referenced Martinson's then-pending patent application by publication number.

43.     Upon information and belief, the Notice Letters contained a typographical error with regard to the publication number.

44.     Upon information and belief, in response to its Notice Letters, Martinson received a letter from Sven W. Hanson on behalf of Phalanx Defense Systems, LLC ("Phalanx"), dated December 1, 2015 ("Response Letter").

45.     Upon information and belief, the Response Letter cited the correct publication number for Martinson's then-pending patent application, confirming that the recipients of the Notice Letters had actual knowledge of the correct publication number of Martinson's published patent application, and further confirming that there was no confusion regarding the publication number referred to in the Notice Letters despite the typographical error.

46.     Upon information and belief, the Response Letter stated that North American Rescue had purchased the remaining inventory of Phalanx's ELSA products.  The Response

Letter further acknowledged that these ELSA products sold to North American Rescue had been manufactured under the License Agreement.

47.     Upon information and belief, at least as early as its receipt of the Response Letter, Phalanx was aware that the ELSA product was an embodiment of the invention disclosed and claimed in Martinson's then-pending patent application.

48.     Upon information and belief, Phalanx had actual knowledge of Martinson's published patent application prior to Phalanx's receipt of the Notice Letters.

49.     Upon information and belief, since at least the issuance of the '100 patent, Martinson has marked its ELSA combination bag/vest products with patent number 9,737,100.

50.     Upon information and belief, since at least the issuance of the '145 patent, Martinson has marked its ELSA combination bag/vest products with patent number 9,861,145.

51.     Upon information and belief, on January 3, 2018, Phalanx's attorney, Sven Hanson, contacted Martinson via email and advised Martinson that Phalanx was aware of the '100 patent and that Phalanx was interested in purchasing the patent or exploring a renewed licensing arrangement.

52.     Upon information and belief, on January 19, 2018, Martinson, through its attorney, responded to Mr. Hanson's inquiry by informing Phalanx of both the '100 patent and the '145 patent, declining Phalanx's request to purchase the '100 patent, and conveying a proposed license structure.

53.     Upon information and belief, Martinson did not receive a response to its January 19, 2018, license offer.

## MARTINSON'S ELSA TRADEMARK

54.   At least as early as December 2013, Martinson adopted the mark ELSA to identify its innovative combination bag/vest product.

55.   Since adoption of the ELSA mark, Martinson has continuously used the ELSA mark in interstate commerce to identify its combination bag/vest product to consumers.

56.   Martinson's ELSA product is widely recognized for its superior quality and enjoys substantial popularity in the marketplace.

57.   As a result of Martinson's use of the ELSA mark in connection with its combination bag/vest product, the ELSA mark has become exclusively associated with Martinson by consumers.

58.   Martinson has developed extensive goodwill in its ELSA mark through years of substantial effort and investment, including its efforts to develop, advertise and promote the ELSA product.

59.   Martinson's ELSA mark, when used on or in connection with combination bag/vest products, is identified and associated in consumers' minds exclusively with Martinson.

60.   The ELSA mark is strong, highly distinctive of Martinson, and entitled to the broadest scope of protection.

61.   As a result of its continuous use in connection with its combination bag/vest product, Martinson has developed valuable goodwill in its ELSA mark.

62.   Following the termination of the License Agreement, Phalanx's use of the ELSA mark was no longer authorized by Martinson because Phalanx's right to use the ELSA mark was terminated when the License Agreement terminated and Martinson has not subsequently directly licensed or otherwise authorized Phalanx to use its ELSA mark.

## PHALANX'S WRONGFUL CONDUCT

63. Upon information and belief, Phalanx has manufactured, marketed and sold a combination bag/vest product called the "Agent" in the United States.

64. Upon information and belief, in early 2016 Phalanx rebranded the ELSA combination bag/vest product Phalanx manufactured under the License Agreement to the "Agent."

65. Upon information and belief, Phalanx's Agent combination bag/vest product is identical in all respects to the ELSA combination bag/vest product that Phalanx manufactured and sold under the License Agreement and for which Phalanx previously paid royalties.

66. Indeed, upon information and belief, according to statements made by Phalanx through its representatives during a major trade show, the Agent product was "the same thing" as the ELSA, Phalanx just "changed the name on it."

67. Upon information and belief, Phalanx's Agent combination bag/vest product is a stitch-for-stitch copy of Martinson's ELSA combination bag/vest product, which is an embodiment of both the '100 patent and the '145 patent.

68. Upon information and belief, Phalanx intentionally attempted to mislead consumers into believing there is a relationship between Martinson's ELSA and Phalanx's Agent combination bag/vest products by including the phrase "formerly known as the ELSA™ (Emergency Life Saving Armor™)" in its marketing and advertising of the Agent combination bag/vest product.

69. In addition, upon information and belief, Phalanx intentionally and willfully induced its customers and downstream retailers to infringe Martinson's ELSA mark by encouraging them to identify the Agent combination bag/vest product as "formerly known as the

ELSA" in order to confuse or deceive consumers and end users as to the affiliation, connection, or association of Phalanx with Martinson, and as to the origin, sponsorship, or approval of Phalanx's goods by Martinson.

70.     Upon information and belief, Phalanx continued to supply its product to its customers and downstream retailers whom it knew or had reason to know were infringing Martinson's ELSA mark in order to confuse or deceive consumers and end users as to the affiliation, connection, or association of Phalanx with Martinson, and as to the origin, sponsorship, or approval of Phalanx's goods by Martinson.

71.     The use of the "formerly known as ELSA" language, which was with the knowledge and consent of Phalanx, has caused actual confusion in the marketplace.

72.     Upon information and belief, Martinson has received communication from consumers indicating that the consumers were misled into believing that Martinson was no longer in business and no longer selling its ELSA product.

73.     Upon information and belief, Phalanx has improperly benefited from Martinson's goodwill, obtaining sales that were rightfully Martinson's as a result of Phalanx's unauthorized use of the ELSA trademark.

74.     Upon information and belief, Martinson has lost substantial sales as a result of Phalanx's unauthorized use of the ELSA trademark.

75.     Upon information and belief, Phalanx has manufactured, marketed and sold a combination bag/vest product called the "Escort" in the United States.

76.     Upon information and belief, the Escort combination bag/vest product is a highly-similar derivative of Martinson's ELSA combination bag/vest product, which is an embodiment of both the '100 patent and the '145 patent.

77.     Further, upon information and belief, not only is the Escort combination bag/vest product a highly-similar derivative of Martinson's ELSA combination bag/vest product, but the Escort combination bag/vest product also utilizes a variation on a design improvement Martinson had communicated to Phalanx in July of 2014.

78.     Upon information and belief, Phalanx has manufactured, marketed and sold a combination bag/vest product called the "Executive" in the United States.

79.     Upon information and belief, the Executive combination bag/vest product is a derivative of Martinson's ELSA combination bag/vest product, which is an embodiment of both the '100 patent and the '145 patent.

80.     Upon information and belief, Phalanx was provided notice of Martinson's provisional patent rights and potential infringement of those rights since at least as early as November 19, 2015.  Since being put on notice, it was objectively reckless and unreasonable for Phalanx to continue to make, use, sell, offer to sell, and/or import its Agent, Escort, and Executive combination bag/vest products.

81.     Further, upon information and belief, Phalanx had constructive and/or actual notice of the '100 patent and the '145 patent as of each patent's respective issue date.  Since being put on notice, it was objectively reckless and unreasonable for Phalanx to continue to make, use, sell, offer to sell, and/or import its Agent, Escort, and Executive combination bag/vest products.

82.     Upon information and belief, sometime after receiving Martinson's Notice Letter Phalanx took steps to acquire the rights to U.S. Patent No. 7,441,278, issued on October 28, 2008 to Kenneth Christopher Blakeley and entitled, "Convertible Body Armor" ("the '278 patent").

83.     Upon information and belief, Phalanx pursued the acquisition of the '278 patent to assure customers that its combination bag/vest products, such as the Agent and the Escort, were not subject to Martinson's provisional rights.

84.     Upon information and belief, Phalanx acquired the '278 patent on January 15, 2016, through an assignment to Phalanx from the inventor, Kenneth Christopher Blakeley.

85.     Upon information and belief, following its acquisition of the '278 patent, Phalanx marked its Agent, Escort, and Executive combination bag/vest products as "Patented. U.S. Patent #7441278."

86.     Upon information and belief, the '278 patent does not cover Phalanx's Agent, Escort, or Executive combination bag/vest products.

87.     The '278 patent includes three independent claims. These independent claims, claims 1, 11 and 20, each require:

> a pair of shoulder straps, each having a first end secured to the first panel adjacent the first edge of the first panel, and a second end secured to the second panel adjacent the first edge of the second panel

88.     Upon information and belief, none of Phalanx's combination bag/vest products meet this limitation of claims 1, 11 and 20 regarding the nature of the shoulder straps for at least the reason that none of Phalanx's combination bag/vest products include straps that are secured to both the first panel and the second panel.

89.     In addition, claims 1, 11 and 20 of the '278 patent also recite that the first and second panels each have a "periphery" and require that a fastener be connected to the panels and extend about some portion of the periphery.

90.     Upon information and belief, none of Phalanx's combination bag/vest products meet this limitation of claims 1, 11 and 20 regarding the location of the fastener for at least the

reason that each of Phalanx's combination bag/vest products attaches the fasteners to an additional piece of fabric that extends the fasteners away from the panel, resulting in a fastener placement that is not about the periphery of the panels.

91.     Upon information and belief, Phalanx knew or should have known that its combination bag/vest products were not covered by the '278 patent and were, therefore, unpatented articles.

92.     Nevertheless, upon information and belief, following its acquisition of the '278 patent Phalanx misled consumers for combination bag/vest products by asserting that Phalanx's combination bag/vest products were patented articles covered by the '278 patent.

93.     Upon information and belief, in addition to misleading customers by indicating that Phalanx's combination bag/vest products were covered by the '278 patent, Phalanx also misled consumers when, after Phalanx rebranded the ELSA combination bag/vest product to the "Agent," Phalanx continued to use Martinson's ELSA trademark.

94.     For example, upon information and belief, during at least one major trade show, a Phalanx representative identified the ELSA product by name and then stated that Phalanx's "new" Agent combination bag/vest product "is the exact same thing."

95.     In addition, upon information and belief, Phalanx induced retailers to infringe Martinson's ELSA mark by encouraging them to identify the AGENT product as "formerly known as the ELSA."

96.     Upon information and belief, the use of the "formerly known as ELSA" language, which was with the knowledge and consent of Phalanx has caused actual confusion in the marketplace.

97.     Upon information and belief, among other effects, Martinson has received communication from customers indicating that they were misled into believing that Martinson was no longer in business and no longer selling its ELSA product.

98.     Upon information and belief, Phalanx has improperly benefited from Martinson's goodwill, obtaining sales as a result of this infringement that were rightfully Martinson's.

99.     In addition, upon information and belief, Martinson has lost substantial sales as a result of this confusion.

## PHALANX'S INFRINGEMENT OF THE '100 PATENT

100.    Upon information and belief, Phalanx's Agent combination bag/vest product infringes at least claim 1 of the '100 patent.

101.    Claim 1 of the '100 patent covers a combination bag/vest and requires a vest comprised of a chest covering portion and a back covering portion the chest covering portion and back covering portion each portion having a vest surface; a pair of chest strap portions extending from the vest surface of the chest covering portion and a corresponding pair of back strap portions extending from the vest surface of the back covering portion; adjustable and separable shoulder straps formed by overlaying the pair of chest strap portions and the pair of back strap portions; and a modular accessory attachment system disposed on a vest surface of the chest and/or back covering portions for attaching one or more modular accessories to the chest and/or back covering elements in a desired configuration.

102.    Upon information and belief, the Agent combination bag/vest product includes a vest that has a chest covering portion and a back covering portion the chest covering portion and back covering portion each portion having a vest surface; a pair of chest strap portions extending from the vest surface of the chest covering portion and a corresponding pair of back strap

portions extending from the vest surface of the back covering portion; adjustable and separable shoulder straps formed by overlaying the pair of chest strap portions and the pair of back strap portions; and a modular accessory attachment system disposed on a vest surface of the chest and/or back covering portions for attaching one or more modular accessories to the chest and/or back covering elements in a desired configuration.

103.   Claim 1 of the '100 patent further requires a bag comprised of at least one back bag layer attached to the back covering portion opposite the vest surface; at least one chest bag layer attached to the chest covering portion opposite the vest surface; a back fastener band extending from the at least one back bag layer and a chest fastener band extending from the at least one chest bag layer; and at least one fastener for fastening the back fastener band to the chest fastener band.

104.   Upon information and belief, the Agent combination bag/vest product includes a bag that has at least one back bag layer attached to the back covering portion opposite the vest surface; at least one chest bag layer attached to the chest covering portion opposite the vest surface; a back fastener band extending from the at least one back bag layer and a chest fastener band extending from the at least one chest bag layer; and at least one fastener for fastening the back fastener band to the chest fastener band.

105.   Upon information and belief, when the Agent combination bag/vest product is worn in the vest configuration, the vest surface of the chest covering portion the vest surface of the back covering portion faces away from a wearer of the vest.

106.   Similarly, upon information and belief, when the Agent combination bag/vest product is in the bag configuration, the back fastener band and the chest fastener band are at least

partially fastened such that the back bag layer and the chest bag layer are exposed and the vest surfaces of the chest covering portion and back covering portion are concealed.

107.    In addition, upon information and belief, the Agent combination bag/vest product maintains a desired configuration of the one or more modular accessories attached to the modular accessory attachment system on the vest surface of the chest and/or back covering portions in both the vest configuration and the bag configuration and when in the bag configuration, the Agent combination bag/vest product conceals the desired configuration of the one or more modular accessories attached to the modular accessory attachment system on the vest surface of the chest and/or back covering portions from view.

## PHALANX'S INFRINGEMENT OF THE'145 PATENT

108.    Upon information and belief, Phalanx's Agent, Escort, and Executive combination bag/vest products infringe at least claim 1 of the'145 Patent.

109.    Claim 1 of the '145 patent covers a combination bag/vest and requires a vest comprised of a chest covering portion and a back covering portion the chest covering portion and back covering portion each portion having a vest surface; a pair of separable shoulder straps each connecting an upper portion of the chest covering portion with an upper portion of the back covering portion to form and defining a head opening; and a modular accessory attachment system disposed on a vest surface of the chest and/or back covering portions for attaching one or more modular accessories to the chest and/or back covering elements in a desired configuration.

110.    Upon information and belief, The Agent, Escort, and Executive combination bag/vest products each include a vest that has a chest covering portion and a back covering portion the chest covering portion and back covering portion each portion having a vest surface; a pair of separable shoulder straps each connecting an upper portion of the chest covering portion

with an upper portion of the back covering portion to form and defining a head opening; and a modular accessory attachment system disposed on a vest surface of the chest and/or back covering portions for attaching one or more modular accessories to the chest and/or back covering elements in a desired configuration.

111.    Claim 1 of the '145 patent further requires a bag comprised of at least one back bag layer attached to the back covering portion opposite the vest surface; at least one chest bag layer attached to the chest covering portion opposite the vest surface; a back fastener band extending from the at least one back bag layer and a chest fastener band extending from the at least one chest bag layer; and at least one fastener for fastening the back fastener band to the chest fastener band.

112.    Upon information and belief, The Agent, Escort, and Executive combination bag/vest products each include a bag that has at least one back bag layer attached to the back covering portion opposite the vest surface; at least one chest bag layer attached to the chest covering portion opposite the vest surface; a back fastener band extending from the at least one back bag layer and a chest fastener band extending from the at least one chest bag layer; and at least one fastener for fastening the back fastener band to the chest fastener band.

113.    Upon information and belief, when each of the Agent, Escort, and Executive combination bag/vest products is worn in the vest configuration, the vest surface of the chest covering portion the vest surface of the back covering portion faces away from a wearer of the vest.

114.    Similarly, upon information and belief, when each of the Agent, Escort, and Executive combination bag/vest products is in the bag configuration, the back fastener band and the chest fastener band are at least partially fastened such that the back bag layer and the chest

bag layer are exposed and the vest surfaces of the chest covering portion and back covering portion are concealed.

115.     In addition, upon information and belief, the Agent, Escort, and Executive combination bag/vest products each maintain a desired configuration of the one or more modular accessories attached to the modular accessory attachment system on the vest surface of the chest and/or back covering portions in both the vest configuration and the bag configuration and, when in the bag configuration, each of the Agent, Escort, and Executive combination bag/vest products conceals the desired configuration of the one or more modular accessories attached to the modular accessory attachment system on the vest surface of the chest and/or back covering portions from view.

## PHALANX'S ALLEGATION OF TORTIOUS INTERFERENCE

116.     On January 11, 2019, Phalanx initiated an action in state court against Martinson, allegedly pursuing a claim of tortious interference.

117.     Phalanx's claim of tortious interference is premised on the notification by Martinson of its provisional patent rights to third parties, which, upon information and belief, included companies selling the ELSA and Escort products despite the termination of the License Agreement.

118.     Phalanx's allegations relate exclusively to federal law, namely, the notification and assertion of patent rights by Martinson.

## COUNT 1
## INFRINGEMENT OF THE '100 PATENT

119.     Martinson incorporates by reference and re-alleges the allegations of paragraphs 1 through 118.

120.    Upon information and belief, Phalanx has infringed, and continues to infringe, at least claim 1 of the '100 patent under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents, by making, using selling, offering to sell, and/or importing the Agent combination bag/vest product.

121.    Upon information and belief, Phalanx has offered for sale the Agent combination bag/vest product throughout the United States and within this Judicial District.

122.    Upon information and belief, at least by November 19, 2015, Phalanx has been on notice of Martinson's patent rights.  Phalanx's conduct in selling, and continuing to sell, the Agent combination bag/vest product after being aware of Martinson's patent rights, constitutes reckless behavior amounting to willful infringement.

123.    Upon information and belief, Phalanx has knowingly induced other persons, such as its customers and end users, to directly infringe the '100 patent by advertising and promoting the infringing products for sale, for example, through its website and product catalogs.

124.    Upon information and belief, Phalanx engaged in such inducement to promote the sales of the infringing products, and actively induced customers and end users to purchase and use products that infringe the '100 patent, despite being aware that its products were unlicensed and infringed Martinson's intellectual property rights.

125.    Phalanx's acts of infringement have caused damage to Martinson, and Martinson is entitled to recover from Phalanx damages sustained as a result of Phalanx's infringement of the '100 patent.

126.    Phalanx's acts of infringement have caused, and will continue to cause, irreparable harm to Martinson.  Phalanx and Martinson directly compete in the market for tactical equipment.  Martinson is being forced to compete against products that infringe

Martinson's patented inventions.  Because Phalanx's infringement has cost Martinson market share and downstream sales, and forced Martinson to compete against embodiments of its own invention, any hardship that an injunction would cause pales in comparison to the hardship Martinson will continue to suffer because of Phalanx's infringement.  The public interest favors an injunction to protect Martinson's investment-based risk that resulted in a patented invention, and to enforce Martinson's statutory right to exclude.  The circumstances of Phalanx's infringement thus warrant an injunction barring Phalanx from further infringement of the '100 patent.

127.    This is an exceptional case under 35 U.S.C. § 285, entitling Martinson to recover its reasonable attorneys' fees.

## COUNT 2
## INFRINGEMENT OF THE '145 PATENT

128.    Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

129.    Upon information and belief, Phalanx has infringed, and continues to infringe, at least claim 1 of the '145 patent under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing the Agent, Escort, and Executive combination bag/vest products.

130.    Upon information and belief, Phalanx has offered for sale the Agent, Escort, and Executive combination bag/vest products throughout the United States and within this Judicial District.

131.    Upon information and belief, at least by November 19, 2015, Phalanx has been on notice of Martinson's patent rights.  Phalanx's conduct in selling, and continuing to sell, the

Agent, Escort, and Executive combination bag/vest products after being aware of Martinson's patent rights, constitutes reckless behavior amounting to willful infringement.

132.    Upon information and belief, Phalanx has knowingly induced other persons, such as its customers and end users, to directly infringe the '145 patent by advertising and promoting the infringing products for sale, for example, through its website and product catalogs.

133.    Upon information and belief, Phalanx engaged in such inducement to promote the sales of the infringing products, and actively induced customers and end users to purchase and use products that infringe the '145 patent, despite being aware that its products were unlicensed and infringed Martinson's intellectual property rights.

134.    Phalanx's acts of infringement have caused damage to Martinson, and Martinson is entitled to recover from Phalanx damages sustained as a result of Phalanx's infringement of the '145 patent.

135.    Phalanx's acts of infringement have caused, and will continue to cause, irreparable harm to Martinson.  Phalanx and Martinson directly compete in the market for tactical equipment.  Martinson is being forced to compete against products that infringe Martinson's patented inventions.  Because Phalanx's infringement has cost Martinson market share and downstream sales, and forced Martinson to compete against embodiments of its own invention, any hardship that an injunction would cause pales in comparison to the hardship Martinson will continue to suffer because of Phalanx's infringement.  The public interest favors an injunction to protect Martinson's investment-based risk that resulted in a patented invention, and to enforce Martinson's statutory right to exclude.  The circumstances of Phalanx's infringement thus warrant an injunction barring Phalanx from further infringement of the '145 patent.

136.    This is an exceptional case under 35 U.S.C. § 285, entitling Martinson to recover its reasonable attorneys' fees.

## COUNT 3
## UNFAIR COMPETITION UNDER THE LANHAM ACT § 1125(a)(1)(A)

137.    Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

138.    Martinson is the owner of the ELSA mark.

139.    The ELSA mark is highly distinctive and is recognized as a source indicator by consumers and end users, who exclusively associate the ELSA mark with Martinson as the source of the products.

140.    Martinson's ownership and use in commerce of the ELSA mark predates the use by Phalanx.

141.    Phalanx's unauthorized use in commerce of the ELSA mark as described above constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Phalanx with Martinson and/or as to the origin, sponsorship, or approval by Martinson of Phalanx's goods.  Phalanx's unauthorized use has caused irreparable harm to Martinson and the goodwill Martinson has developed in the ELSA mark.

142.    Upon information and belief, Phalanx intentionally and willfully used Martinson's ELSA mark to confuse or deceive consumers and end users as to the affiliation, connection, or association of Phalanx with Martinson, and as to the origin, sponsorship, or approval of Phalanx's goods by Martinson.

143.   Upon information and belief, Phalanx intentionally and willfully induced its customers and downstream retailers to infringe Martinson's ELSA mark to confuse or deceive consumers and end users as to the affiliation, connection, or association of Phalanx with Martinson, and as to the origin, sponsorship, or approval of Phalanx's goods by Martinson.

144.   Upon information and belief, Phalanx continued to supply its product to its customers and downstream retailers whom it knew or had reason to know were infringing Martinson's ELSA mark to confuse or deceive consumers and end users as to the affiliation, connection, or association of Phalanx with Martinson, and as to the origin, sponsorship, or approval of Phalanx's goods by Martinson.

145.   Upon information and belief, at least one potential customer reached out to Martinson expressing confusion regarding use of the ELSA mark by one of Phalanx's customers and indicating that Phalanx's customer's use of "formerly known as ELSA" had been perceived to mean that Martinson was no longer in the business of selling its ELSA combination bag/vest product.

146.   As a direct and proximate result of Phalanx's violations of 15 U.S.C. § 1125(a), Martinson has been and will continue to be damaged irreparably and, unless Phalanx is restrained, Martinson will continue to be so damaged because it has no adequate remedy at law.

147.   Upon information and belief, Phalanx has realized substantial profits and other benefits, rightfully belonging to Martinson as a result of Phalanx's wrongful conduct.

148.   This is an exceptional case under 15 U.S.C. § 1117, entitling Martinson to recover its reasonable attorneys' fees.

## COUNT 4
## <u>FALSE MARKING UNDER 35 U.S.C. § 292(b)</u>

149.     Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

150.     Upon information and belief, Phalanx has falsely marked upon, affixed to, and/or used in advertising in connection with Phalanx's unpatented Agent, Escort, and Executive combination bag/vest products, the word "patent" and the patent number for the '278 patent, 7441278, for purposes of deceiving the public.

151.     Upon information and belief, Phalanx's false marking deceived the public into believing that Phalanx's Agent, Escort, and Executive combination bag/vest products were patented articles.

152.     Upon information and belief, Phalanx's false marking has caused Martinson to suffer a competitive injury as a result of the fact that Phalanx's actions have either deceived or had the capacity to deceive a substantial segment of Martinson's potential consumers.

153.     This is an exceptional case under 35 U.S.C. § 285, entitling Martinson to recover its reasonable attorneys' fees.


## COUNT 5
## <u>UNFAIR COMPETITION UNDER THE LANHAM ACT § 1125(a)(1)(B)</u>

154.     Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

155.     Upon information and belief, Phalanx has sold Phalanx's Agent, Escort, and Executive combination bag/vest products in interstate commerce.

156.     Upon information and belief, Phalanx has knowingly and willfully made the false and misleading statement that Phalanx's Agent, Escort, and Executive combination bag/vest

products are covered by the '278 patent on the products themselves and in commercial advertising for the products.

157.     Upon information and belief, Phalanx's false and misleading statement that Phalanx's Agent, Escort, and Executive combination bag/vest products are covered by the '278 patent either deceived or had the capacity to deceive a substantial segment of Martinson's potential consumers.

158.     Upon information and belief, Phalanx's false and misleading statement that Phalanx's Agent, Escort, and Executive combination bag/vest products are covered by the '278 patent is material, in that it is likely to influence the consumer's purchasing decision.

159.     Martinson has been or is likely to be injured as a result of Phalanx's false and misleading statement that Phalanx's Agent, Escort, and Executive combination bag/vest products are covered by the '278 patent.

160.     This is an exceptional case under 15 U.S.C. § 1117, entitling Martinson to recover its reasonable attorneys' fees.

## COUNT 6
## BREACH OF CONTRACT

161.     Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

162.     Martinson and Phalanx entered a valid exclusive License Agreement.

163.     Phalanx breached the License Agreement by failing to notify Martinson of its sales and refusing to pay royalties under the License Agreement.

164.     As a result of Phalanx's breach of the License Agreement, Martinson is owed royalties on the Escort product (and any other product triggering the royalty obligation during the term of the License Agreement), along with interest per the License Agreement.

## COUNT 7
## FLORIDA COMMON LAW UNFAIR COMPETITION

165.     Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

166.     This is an action for common law unfair competition under the laws of the State of Florida.

167.     Phalanx's aforesaid activities, namely falsely advertised its products using the ELSA mark and falsely represented its products as patented, constitute common law unfair competition under the laws of the State of Florida.

168.     Martinson has been damaged by the above-described common law unfair competition.

## COUNT 8
## DECLARATORY JUDGMENT OF NO TORTIOUS INTERFERENCE

169.     Martinson incorporates by reference and realleges the allegations of paragraphs 1 through 118.

170.     There exists a bona fide, actual, present practical need for a declaration on Phalanx's contentions of tortious interference.

171.     Martinson seeks a declaration addressing the present, ascertained or ascertainable state of facts regarding Phalanx's contentions of tortious interference related to Martinson's notice of pending and issued patent rights.

172.    Upon information and belief, the facts and the law applicable to the facts establish Martinson's immunity, power, privilege or right to a declaration that is has not tortiously interfered with any business relationship of Phalanx.

173.    Martinson and Phalanx have, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law which are all before the court by proper process.

## PRAYER FOR RELIEF

WHEREFORE, Martinson respectfully requests the Court enter judgment in its favor and against Phalanx as follows:

A.    Finding that Phalanx has infringed the '100 patent and '145 Patent under 35 U.S.C. § 271;

B.    Finding that Phalanx's infringement of the '100 patent and the '145 patent was willful;

C.    Awarding damages to Martinson under 35 U.S.C. § 284 along with interests and costs for Phalanx's infringement of the '100 patent and the '145 patent.

D.    Finding that this case is an exceptional case under 35 U.S.C. § 285 and awarding all remedies available thereunder including Martinson's attorneys' fees;

E.    Entering a permanent injunction under 35 U.S.C. § 283 enjoining Phalanx, its officers, partners, employees, agents, parent subsidiaries, attorneys, and anyone acting in concert or participating with Phalanx from making, selling, offering for sale, importing, or using a product that infringes the '100 patent and the '145 patent;

F.    Finding that Phalanx has engaged in unfair competition under 15 U.S.C. § 1125(a) and applicable state law;

G.     Awarding damages to Martinson under 15 U.S.C. § 1117 along with interests and costs for Phalanx's acts of unfair competition;

H.     Finding that this is an exceptional case under 15 U.S.C. § 1117 and awarding Martinson its reasonable attorneys' fees;

I.     Entering a permanent injunction under 15 U.S.C. § 1116 enjoining Phalanx, its officers, partners, employees, agents, parent subsidiaries, attorneys, and anyone acting in concert or participating with Phalanx from engaging in further unfair competition regarding Martinson's ELSA trademark and false and misleading statements concerning the Agent, Escort, or Executive combination bag/vest products;

J.     Finding that Phalanx has engaged in false marking under 35 U.S.C. § 292;

K.     Issuing a declaration that Martinson has not tortiously interfered with any business relations of Phalanx by virtue of Martinson's efforts to notify competitors of Martinson's provisional patent rights;

L.     Finding that Phalanx has breached the License Agreement;

M.     Awarding damages to Martinson for Phalanx's breach of the License Agreement; and

N.     Awarding to Martinson such other and further relief, both legal and equitable, as this Court or a jury deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

Dated March 26, 2019

<div style="margin-left: 45%;">

s/Ryan T. Santurri
Stephen H. Luther
Florida Bar No. 528846
Primary:  sluther@allendyer.com
Secondary:  mleavy@allendyer.com
Ryan T. Santurri
Florida Bar No. 0015698
Primary: rsanturri@allendyer.com
Secondary: mleavy@allendyer.com
**ALLEN, DYER, DOPPELT,**
**& GILCHRIST, P.A.**
255 S. Orange Avenue, Suite 1401
Orlando, Florida 32801
Tel. (407) 841-2330
Fax: (407) 841-2343
Local Counsel for Plaintiff

Sean Sweeney
Maine Bar No. 10062
Massachusetts Bar No. 667,938
Tredecim LLC
91-J Auburn Street, #1133
Portland, ME  04103
sean@tredecimlaw.com
(207) 221-6100
Trial Counsel for Plaintiff (*Pro Hac Vice*
application to be filed)

</div>